UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ERICA HAWKINS,

    *Plaintiff,*

    v.                                        Case No: 2:26-cv-384

CITY OF KENOSHA, MICHAEL O'NEIL, MATTHEW LOVELL,
ANTHONY BECK, JUSTIN LABATORE, AND CADEN KREUSER,

    *Defendants.*

## COMPLAINT

Plaintiff Erica Hawkins, by her attorneys, Strang Bradley, LLC, for her complaint against Defendants, states:

### INTRODUCTION

1. This is a civil rights lawsuit brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Erica Hawkins's constitutional right to be free from unreasonable search and seizure in violation of the Fourth Amendment of the United States Constitution.

2. On January 4, 2025, City of Kenosha Officers Michael O'Neil and Matthew Lovell conducted a traffic stop of Hawkins for nonregistration of a motor vehicle.

3. Although there were no signs of intoxication, the officers prolonged the stop to conduct a dog sniff of the vehicle.

4. Additionally, Hawkins was pulled out of the vehicle and frisked without reasonable suspicion that she was armed and dangerous.

5. On September 24, 2025, Hawkins was pulled over by City of Kenosha Officer Caden Kreuser for an improper right turn.

6. Again, Hawkins was pulled out of her car and frisked without reasonable suspicion that she was armed and dangerous.

7. She was also subjected to an invasive pocket search without a warrant or an applicable exception to the warrant requirement.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and the state law claim for indemnification under 28 U.S.C. § 1367.

9. Venue is proper under 28 U.S.C. § 1391(b)(2). Defendant City of Kenosha is a political subdivision of the state of Wisconsin located within this judicial district. Additionally, the events giving rise to the claims asserted herein occurred within the judicial district.

## PARTIES

10. Plaintiff Erica Hawkins is an adult resident of Wisconsin.

11. Defendant City of Kenosha is a political subdivision of the state of Wisconsin and is or was the employer of the individual Defendants and is required to pay any tort judgment for damages for which its employees are liable for acts within the scope of their employment.

12. Defendant O'Neil was, at the time of this occurrence, employed as a police officer for the City of Kenosha Police Department.

13. At all times Defendant O'Neil interacted with Plaintiff on January 4, 2025, Defendant O'Neil was on duty, acting under color of state law, ordinance, and regulation.

14. At all times Defendant O'Neil interacted with Plaintiff on January 4, 2025, Defendant O'Neil acted within the scope of his employment with the City of Kenosha.

15. Defendant Lovell was, at the time of this occurrence, employed as a police officer for the City of Kenosha Police Department.

16. At all times Defendant Lovell interacted with Plaintiff on January 4, 2025, Defendant Lovell was on duty, acting under color of state law, ordinance, and regulation.

17. At all times Defendant Lovell interacted with Plaintiff on January 4, 2025, Defendant Lovell acted within the scope of his employment with the City of Kenosha.

18. Defendant Beck was, at the time of this occurrence, employed as a police officer for the City of Kenosha Police Department.

19. At all times Defendant Beck interacted with Plaintiff on September 24, 2025, Defendant Beck was on duty, acting under color of state law, ordinance, and regulation.

20. At all times Defendant Beck interacted with Plaintiff on September 24, 2025, Defendant Beck acted within the scope of his employment with the City of Kenosha.

21. Defendant Labatore was, at the time of this occurrence, employed as a police officer for the City of Kenosha Police Department.

22. At all times Defendant Labatore interacted with Plaintiff on September 24, 2025, Defendant Labatore was on duty, acting under color of state law, ordinance, and regulation.

23. At all times Defendant Labatore interacted with Plaintiff on September 24, 2025, Defendant Labatore acted within the scope of his employment with the City of Kenosha.

24. Defendant Kreuser was, at the time of this occurrence, employed as a police officer for the City of Kenosha Police Department.

25. At all times Defendant Kreuser interacted with Plaintiff on September 24, 2025, Defendant Kreuser was on duty, acting under color of state law, ordinance, and regulation.

26. At all times Defendant Kreuser interacted with Plaintiff on September 24, 2025, Defendant Kreuser acted within the scope of his employment with the City of Kenosha.

## FACTS

### The January 4, 2025 Interaction

27. On January 4, 2025, Defendants Michael O'Neil and Matthew Lovell were on duty in the City of Kenosha.

28. Defendant O'Neil observed a Ford Edge with Montana plates.

29. A record check revealed that the registration for the vehicle was expired.

30. Defendant O'Neil initiated a traffic stop on the vehicle.

31. The vehicle pulled over in front of a fire station.

32. Defendants O'Neil and Lovell approached and saw that there were two people in the car.

33. The driver was identified as Erica Hawkins.

34. There was no indication that Ms. Hawkins was intoxicated, and there was no odor of any controlled substance.

35. After identifying the driver and passenger, the officers returned to their squad car and ran checks on their drivers' licenses. They learned that the passenger had previously been convicted of a drug-related felony.

36. Defendant O'Neil was able to confirm that Ms. Hawkins' Wisconsin driver's license was valid.

37. Defendant O'Neil knew that the registration of Ms. Hawkins' vehicle was expired prior to initiating the traffic stop.

38. At no time prior to arresting Ms. Hawkins did Defendants O'Neil or Lovell request dispatch assist them with checking the status of the registration of Ms. Hawkins' vehicle.

39. At no time between initiating the traffic stop and arresting Ms. Hawkins were Defendants O'Neil or Lovell waiting on a records check from Montana.

40. Defendant O'Neil returned to Ms. Hawkins's car and told her that the record check from Montana was taking a while and that she should pull into a gas station for the rest of their interaction so as not to block the fire station.

41. While pulling into the gas station, Defendant O'Neil radioed for a K-9 unit.

42. Defendant O'Neil then tells Defendant Lovell to "take your time on that" in reference to completing the traffic citation for an expired registration.

43. Defendant O'Neil then reapproached Ms. Hawkins's vehicle and asked where she was coming from.

44. Ms. Hawkins stated that she was coming from church and was on her way to drop off her passenger.

45. When asked, Ms. Hawkins denied having any guns or drugs in the car.

46. Defendant O'Neil then returned to his squad car for several minutes.

47. When he returned to Ms. Hawkins's vehicle, he informed her that a K-9 would conduct an "open air sniff" around the vehicle.

48. He asked Ms. Hawkins to step out of the car, and she complied.

49. Subsequently, he asked Ms. Hawkins to put her hands on her car.

50. Defendant O'Neil then frisked Ms. Hawkins.

51. He did not ask for Ms. Hawkins's consent before performing the frisk.

52. Defendant Lovell stood by and watched the frisk but did not intervene.

53. After completing the frisk, Defendant O'Neil asked Ms. Hawkins to stand to the side.

54. He then asked the passenger out of the car and frisked the passenger.

55. The K-9 officer told Defendant O'Neil that the dog alerted on the vehicle.

56. Defendant O'Neil proceeded to search the vehicle.

57. As a result of what Defendant O'Neil found during the search of the vehicle, Ms. Hawkins was arrested and criminally charged in Kenosha County Circuit Court Case Number 2025CM000021.

58. The charges in Kenosha County Circuit Court Case Number 2025CM000021 were dismissed after Ms. Hawkins's attorney filed a motion to suppress the evidence that resulted from the search of Ms. Hawkins's vehicle.

59. As a direct and proximate result of the acts of Defendants, as detailed above, Plaintiff has suffered, inter alia, a violation of her privacy, emotional suffering, mental distress, humiliation, loss of liberty, and incurred expenses.

60. As a result of the illegal seizure and search of Ms. Hawkins on January 4, 2025, Ms. Hawkins's phone was seized by police. The phone was ultimately searched, which resulted in the disclosure of Ms. Hawkins's private conversations.

**The September 24, 2025 Interaction**

61. On September 24, 2025, Defendant Caden Kreuser was on duty in the City of Kenosha.

62. Defendant Kreuser initiated a traffic stop on a car driven by Plaintiff Erica Hawkins for an improper right turn.

63. As Defendant Kreuser ran Ms. Hawkins's driver's license in his squad car, Defendants Labatore and Beck arrived at the scene.

64. After talking with Defendant Kreuser, Defendant Labatore approached Ms. Hawkins's vehicle and asked her to step out of the car.

65. Ms. Hawkins asked whether she had a choice, and Defendant Labatore answered, "no."

66. Ms. Hawkins exited her vehicle.

67. Defendant Beck then frisked Ms. Hawkins.

68. Ms. Hawkins did not consent to the frisk.

69. Defendant Beck did not have reasonable suspicion that Ms. Hawkins was armed and dangerous.

70. Defendants Labatore and Kreuser stood by and watched the frisk and did not intervene.

71. A K-9 officer arrived and ran a canine around Ms. Hawkins's vehicle.

72. The K-9 officer told the officers on scene that the dog alerted.

73. Defendant Labatore said that since the dog alerted, he was going to search Ms. Hawkins's person.

74. Defendants Beck and Labatore searched Ms. Hawkins's pockets, including an invasive search of her front shirt pockets.

75. Ms. Hawkins did not consent to the pocket search.

76. Defendants Beck and Labatore searched Ms. Hawkins's pockets before a search of the car was completed.

77. Nothing of evidentiary value was located in the search of Ms. Hawkins or her car.

78. Ms. Hawkins was issued a citation for an improper right turn.

79. As a direct and proximate result of the acts of Defendants, as detailed above, Plaintiff has suffered, inter alia, a violation of her privacy, emotional suffering, mental distress, and humiliation.

## COUNT 1:
### 42 U.S.C. § 1983 Claim for Unlawful Search and Failure to Intervene
### January 4, 2025

80. Plaintiff realleges the above paragraphs.

81. Defendant O'Neil searched Plaintiff on January 4, 2025, by patting her down. Plaintiff did not consent, and Defendant O'Neil did not have reasonable suspicion to believe that Plaintiff was armed and dangerous.

82. The actions of Defendant O'Neil in searching Plaintiff without a warrant and without any other permissible lawful reason to do so violated Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure.

83. Defendant Lovell knew there was not reasonable suspicion to believe that the Plaintiff was armed and dangerous but allowed her to be frisked anyway.

84. Defendant Lovell failed to intervene in a constitutional violation he knew was happening before him and he could have stopped.

85. Defendants O'Neil and Lovell thus violated Plaintiff's Fourth Amendment rights to be free from unreasonable searches.

86. The aforementioned actions of Defendants O'Neil and Lovell were the direct and proximate cause of the constitutional violations set forth above and of Plaintiff's injuries and damages as set forth above.

WHEREFORE, pursuant to 42 U.S.C. §§ 1983 & 1988, Plaintiff demands actual or compensatory damages against Defendants O'Neil and Lovell and, because they acted in reckless disregard for Plaintiff's rights, punitive damages, plus the costs of this action, attorneys' fees, and such other relief that the Court deems just and equitable.

## COUNT 2:
## 42 U.S.C. § 1983 Claim for Illegal Seizure for Extending Traffic Stop
## January 4, 2025

87. Plaintiff realleges the above paragraphs.

88. Defendants O'Neil and Lovell unlawfully extended the seizure of Plaintiff by deviating from their original mission of issuing a simple traffic ticket to conduct a dog sniff of Plaintiff's vehicle.

89. Defendants O'Neil and Lovell thus violated Plaintiff's Fourth Amendment rights to be free from unreasonable seizure.

90. The aforementioned actions of Defendants O'Neil and Lovell were the direct and proximate cause of the constitutional violations set forth above and of Plaintiff's injuries and damages as set forth above.

WHEREFORE, pursuant to 42 U.S.C. §§ 1983 & 1988, Plaintiff demands actual or compensatory damages against Defendants O'Neil and Lovell and, because they acted in reckless disregard for Plaintiff's rights, punitive damages, plus the costs of this action, attorneys' fees, and such other relief that the Court deems just and equitable.

## COUNT 3:
## 42 U.S.C. § 1983 Claim for Unlawful Search and Failure to Intervene
## September 24, 2025

91. Plaintiff realleges the above paragraphs.

92. Defendant Beck searched Plaintiff on September 24, 2025, by patting her down. Plaintiff did not consent and Defendant Beck did not have reasonable suspicion to believe that Plaintiff was armed and dangerous.

93. The actions of Defendant Beck in searching Plaintiff without a warrant and without any other permissible lawful reason to do so violated Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure.

94. Defendants Labatore and Kreuser knew there was not reasonable suspicion to believe that the Plaintiff was armed and dangerous but allowed her to be frisked anyway.

95. Defendants Labatore and Kreuser failed to intervene in a constitutional violation they knew was happening before them and they could have stopped.

96. Defendants Beck, Labatore, and Kreuser thus violated Plaintiff's Fourth Amendment rights to be free from unreasonable searches.

97. The aforementioned actions of Defendants Beck, Labatore, and Kreuser were the direct and proximate cause of the constitutional violations set forth above and of Plaintiff's injuries and damages as set forth above.

WHEREFORE, pursuant to 42 U.S.C. §§ 1983 & 1988, Plaintiff demands actual or compensatory damages against Defendants Beck, Labatore, and Kreuser and, because they acted in reckless disregard for Plaintiff's rights, punitive damages, plus the costs of this action, attorneys' fees, and such other relief that the Court deems just and equitable.

## COUNT 4:
## 42 U.S.C. § 1983 Claim for Unlawful Search and Failure to Intervene
## September 24, 2025

98. Plaintiff realleges the above paragraphs.

99. Defendants Beck and Labatore searched Plaintiff's pockets on September 24, 2025. Plaintiff did not consent, and Defendants Beck and Labatore did not have probable cause, a warrant, or an exception to the warrant requirement to conduct this search.

100. Defendant Kreuser knew there was no lawful reason to search Plaintiff's pockets but allowed the search to proceed anyway.

101. Defendant Kreuser failed to intervene in a constitutional violation he knew was happening before him, and he could have stopped.

102. Defendants Beck, Labatore, and Kreuser thus violated Plaintiff's Fourth Amendment rights to be free from unreasonable searches.

WHEREFORE, pursuant to 42 U.S.C. §§ 1983 & 1988, Plaintiff demands actual or compensatory damages against Defendants Beck, Labatore, and Kreuser and, because they acted in reckless disregard for Plaintiff's rights, punitive damages, plus the costs of this action, attorneys' fees, and such other relief that the Court deems just and equitable.

## COUNT 5:
## Indemnification Claim Against City of Kenosha

103. Plaintiff realleges the above paragraphs.

104. Wisconsin law, WIS. STAT. § 895.46, requires public entities to pay any tort judgment for damages for which employees are liable for acts within the scope of their employment.

105. At all times relevant in this action Defendants O'Neil, Lovell, Beck, Labatore, and Kreuser engaged in the conduct complained of while they were on duty and in the course and scope of their employment with the City of Kenosha.

WHEREFORE, Plaintiff asks this Court to find that the City of Kenosha is liable to defend this action against Defendants O'Neil, Lovell, Beck, Labatore, and Kreuser and to satisfy any judgment entered against them by virtue of WIS. STAT. § 895.46.

## JURY DEMAND

Plaintiff hereby demands a trial by jury, pursuant to FED. R. CIV. P. 38(b), on all issues so triable.

Respectfully submitted,

Dated: 10 March 2026,

STRANG BRADLEY, LLC
Attorneys for Plaintiff

/s/ Jacob M. Stroup
John H. Bradley
  Wisconsin Bar No. 1053124
R. Rick Resch
  Wisconsin Bar No. 1117722
Jacob M. Stroup
  Wisconsin Bar No. 1089159
Strang Bradley, LLC
613 Williamson St., Suite 204
Madison, WI 53703
(608) 535-1550
John@StrangBradley.com
Rick@StrangBradley.com
Jacob@StrangBradley.com